# Lee, *et al. v.* Reynolds.

### *Bill to Redeem.*

(Decided Dec. 20, 1910. Rehearing denied Jan. 12, 1911.
54 South. 166.)

*Usury; Evidence; Sufficiency.*—The evidence in this case stated and examined and held to show that the note, to secure which the mortgage foreclosed was given, was tainted with usury.

APPEAL from Barbour Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by Annie T. Lee and husband against R. D. Reynolds to redeem from mortgage foreclosure. Decree for respondents and complainant appeals. Reversed, rendered and remanded.

A. H. MERRILL & SON, and PEACH & THOMAS, for appellant. No question of law is involved in this case, but the appeal is from a decision on the facts, no presumption is indulged in favor of the chancellor. Counsel discuss the evidence, and from it conclude that the court erred in holding that there was no usury in the note.

H. L. MARTIN, for appellee. Counsel discusses the evidence and insists that there was no usury in the transaction, and that the decree of the court should be affirmed.

EVANS, J.—On the 14th day of March, 1887, Annie T. Lee and her husband, R. M. Lee, complainants in this cause, executed and delivered to R. D. Reynolds, the respondent, a note for the sum of $2,784, payable October 1, 1887. This note was secured by a mortgage

[Lee, et al. v. Reynolds.]

on certain personal property and also upon certain lands described in said mortgage. Nineteen years after the note fell due, to wit, on the 5th day of October, 1906, the said debt not having been fully discharged, the said R. D. Reynolds, under a power of sale contained in said mortgage, advertised the said lands for sale. The said Annie T. Lee thereupon made the said R. D. Reynolds a tender of the sum of money, which she and her husband contend was the balance due on the mortgage debt, together with all costs and charges for which said mortgagors were liable. This tender was refused, and the said complainants thereupon filed this bill, in the Barbour county chancery court, to redeem the lands conveyed by said mortgage. Complainants allege in said bill that the contract evidenced by the note was usurious, in that complainants only borrowed or obtained from the respondent the sum of $2,400, and that they contracted and agreed to pay for the use of said money the sum of 16 per cent. thereon as interest, and that both the principal and interest were included in said sum named in said note; that is, that $2,400 of the amount named in the note was principal, and $384 thereof was interest thereon. From the date the money was borrowed until the date it became due was considerably less than a year. From the time the note fell due until the tender was made there had been paid on said indebtedness between $1,2000 and $1,300. The respondent, in his answer, denies that any usury was charged, or contracted for, in said note. He alleges that the money was loaned at the rate of 8 per cent. per annum, and that such was the contract between respondent and complainant.

The question of usury vel non in the contract is the only question insisted upon in appellant's brief. Hence we will consider only this question.

The witnesses upon this disputed question of fact are the complainants, Annie T. Lee and R. M. Lee, on the one side, and the respondent, R. D. Reynolds, his wife, Mrs. R. D. Reynolds, his son, J. L. Reynolds, and his brother, J. W. Reynolds, on the other. Annie T. Lee, one of the complainants, who was the principal debtor, is the sister of the respondent, R. D. Reynolds. From the date of the execution of the note and mortgage, on the 14th day of March, 1887, to the date when the witnesses were examined in this case on the 11th day of March, 1908, about 21 years had transpired. No witness is impeached, except in so far as his testimony is contradicted by the testimony of other witnesses. Owing to the length of time that had transpired since the date of the execution of the papers to the time when the witnesses testified, and the well-known fallibility of human memory, much weight must be given to the correspondence of the verbal testimony with the written testimony in the case. The note and mortgage were in the hands of respondent during the long period of time, and we must presume that they were just as when delivered to him. The testimony of both complainants is to the effect that $2,400 was borrowed, and that the interest agreed upon 16 per cent. from the date of borrowing until the note fell due, and that the interest, amounting to $384, was added to the principal sum, making the face of the note $2,784. These figures exactly agree with the face of the note and the testimony of complainants. Both the complainants testify that the amount of interest put into the note was 16 per cent. by direction of respondent; but that respondent stated that, when they went to settle, he would settle at 8 per cent. per annum. It will be readily seen that 16 per cent. on $2,400 makes $384. It would be a little difficult to understand, if complainants' recollection is

[Lee, et al. v. Reynolds.]

not correct, how it was suggested to their minds that they borrowed just $2,400, agreed to pay 16 per cent. interest thereon, and that this should exactly correspond with the face of the note. On the other hand, it is not difficult to understand how respondent and his witnesses had their minds impressed, after 20 years had passed, that there was no usury in the contract, where he had so kindly indulged the complainants, knowing that after the note fell due, which has been some 19 years before these proceedings were started, that he was only getting 8 per cent. per annum under the law, with the probability that it was never his intention to take more than the legal rate upon the amount loaned when settlement should be had. And it is further easy to understand, consistent with perfect veracity, that if respondent made the statement, at the time the money was borrowed, that, when settlement should be made, he would only exact of complainants the legal rate of interest, that those present, other than those who were contracting to pay the 16 per cent. interest, should be impressed with the idea that only the legal rate of interest was charged. On the other hand, neither respondent, nor any of his witnesses, are able to state what amount of money was loaned, but rest upon the statement of a conclusion that there was no usury included in the note. In this state of the testimony, we are impressed that the preponderance of the testimony upon this point is with complainants; that their recollection of the transaction is probably the correct one.

It seems to be undisputed that the verbal agreement for the loan of the money was made in January, 1887, and a part of the money was then paid over, and the note and mortgage were then written out, but not executed for some reason. On the 14th of the following March, more money was paid over and the papers exe-

cuted. No change was made in the papers at the date
of execution, except the date was changed from the
date the papers were first drawn up to the date on
which they were executed. It was the recollection of
respondent and J. W. Reynolds and J. L. Reynolds
that the principal sum in the note was made up of these
items, viz., $1,200 advanced the date the papers were
written, a debt due by R. M. Lee, for cotton he had
sold belonging to R. D. Reynolds, amounting to $70
or $75 and $1,370 or $1,375 advanced the day the mort-
gage was executed. But Mrs. R. D. Reynolds, wife of
respondent, who counted the money for respondent at
the time the mortgage was executed, states that her
best recollection is that the amount then paid over was
$1,400; which agrees with the testimony of complain-
ants. The testimony of J. W. Reynolds was, in part,
as follows: "He agreed to let them have it at the legal
rate of 8 per cent. interest. The $1,200 and the cotton
were part of the transactions, and R. M. Lee figured
out how much balance of cash there would be coming
under the mortgage for the amount named in it, with
8 per cent. interest. When he finished figuring the
amount of additional loan which he found would be
coming under the mortgage, after accounting for the
$1,200 and the cotton, Dr. Reynolds directed his wife
to turn over to Mrs. Lee that amount of money, and
she did it; and the balance, whose exact amount I can-
not remember, as I stated above, was the balance which
Mr. Lee ascertained himself, after calculating it. The
interest was figured per annum upon each of the sev-
eral items for the time they were to run to the matur-
ity of the mortgage. These items were upon interest
for different lengths of time, and the interest was fig-
ured upon each at 8 per cent. per annum for the length
of time it ran." This was more than 21 years after

[Lee, et al. v. Reynolds.]

the transaction, but he could not remember the amount of money then paid over. It would be quite a coincidence that such figuring should have resulted in exactly $1,400, which, in our judgment, the weight of the evidence tends to show was the amount then paid over, and this amount would not correspond with the other amounts which witness now remembers to have been included in the note, with interest at the rate of 8 per cent. per annum added, so as to make the face of the note. There were possibly other transactions between these parties which have brought about this confusion of memories after so many years.

A decree will be here rendered to the effect that the mortgage debt contained usurious interest; that the principal sum loaned by respondent R. D. Reynolds to complainants, Annie T. Lee and R. M. Lee, was $2,400; that the $384 of the amount named in the face of the note was usurious interest, at 16 per cent. from date loaned to the date of payment. The question as to whether the amount of money tendered by complainants was sufficient cannot be determined until it is duly ascertained what amount the complainants are entitled to have credited upon the mortgage debt and the amount of costs and charges the complainants are liable for up to the date of the tender. A reference to the register in chancery, of Barbour county chancery court, will here be ordered in this cause, the time and place of which he will give due notice to the parties to this cause, or their counsel of record, to ascertain: (1) The amount of costs and charges due by complainants to respondent, including reasonable attorneys' fees, by virtue of said note and mortgage up to the date of the tender made by complainants to respondent. (2) The amount of costs and charges due by complainants to respondent, including reasonable attorney's fees, by vir-

tue of said not and mortgage up to the date of the filing of this bill. (3) The amount of payments made by complainants prior to the date of tender. The finding of these payments to be the same as that of the chancellor in his decree now appealed from, except that the value of things other than money, turned over to respondent in payment, must be ascertained in order to ascertain the full amount of credits the complainants are entitled to. It is further ordered that the register report his findings to the chancery court at the next regular term of said court, when the chancellor will determine whether or not the tender was sufficient and all other questions necessary for the determination of the rights of the parties not already determined.

Reversed, rendered, and remanded.

DOWDELL, C. J., and ANDERSON and SAYRE, JJ., concur.